1   **WILLKIE FARR & GALLAGHER LLP**
    BENEDICT Y. HUR (SBN 224018)
2      bhur@willkie.com
    SIMONA AGNOLUCCI (SBN 246943)
3      sagnolucci@willkie.com
    JOSHUA ANDERSON (SBN 312836)
4      jdanderson@willkie.com
    ERICA S. MIRANDA (SBN 325188)
5      emiranda@willkie.com
    One Front Street, 34th Floor
6   San Francisco, CA 94111
    Telephone:   (415) 858-7400
7   Facsimile:   (415) 858-7599

8
    **Attorneys for Defendant**
9   **Google LLC**

10

11                  **UNITED STATES DISTRICT COURT**

12               **NORTHERN DISTRICT OF CALIFORNIA**

13                       **SAN JOSE DIVISION**

14   DAVID LANDFAIR and SAMUEL M.
     GERSHMAN, individually and on behalf of all        Case No.
15   others similarly situated,

16                          Plaintiff,                  **NOTICE OF REMOVAL**

17          vs.                                         [Removed from Santa Clara County
                                                        Superior Court, Case No.  22CV405052]
18   GOOGLE LLC,

19                          Defendant.

20

21

22

23

24

25

26

27

28

─────────────────────────────────────────
                    NOTICE OF REMOVAL

**TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA:**

PLEASE TAKE NOTICE that Defendant Google LLC ("Google") hereby removes *Landfair, et al. v. Google LLC*, Case No. 22-CV-405052 from Santa Clara County Superior Court to the United States District Court for the Northern District of California on the grounds stated below.  Copies of this Notice of Removal are being served on Plaintiffs David Landfair and Samuel M. Gershman (collectively, "Plaintiffs"), Plaintiffs' counsel, and also filed with the Clerk of Santa Clara County Superior Court, as required by Section 1446 of Title 28 of the United States Code.

## I.    INTRODUCTION

1.    On September 30, 2022, Plaintiffs filed a complaint (the "Complaint") on behalf of two putative classes against Google in Santa Clara County Superior Court under the caption *Landfair, et al. v. Google LLC*, Case No. 22-CV-405052.  Google was served with the Complaint on October 24, 2022.

2.    Plaintiffs allege that Google engaged in unlawful retention of its customers' video rental history and other personal information in violation of the New York Video Consumer Privacy Act, N.Y. General Business Law ("GBL") §§ 670–675 ("NYVCPA") and Minnesota's M.S.A. § 3251.01–03.  *See, e.g.*, Compl. (attached hereto as Exhibit A) ¶¶ 1, 63, 74.  Plaintiffs seek minimum statutory damages of $500 per class member as well as prejudgment interest, costs, and attorneys' fees.  *See id.* ¶¶ 66, 77; *see also id.* at 10–11.

3.    Plaintiffs styled the Complaint as a "Class Action" and seek to represent and have the following classes certified:

- The New York Class:  "Plaintiff Landfair seeks to represent all New York residents who (a) rented a video from Google through Google Play wherein (b) Google retained for more than 65 days their personally identifiable information, including information that identifies the person as having requested or obtained specific video materials or services, and (c) without their consent."  Compl. ¶ 48.

- <u>The Minnesota Class</u>:  "Plaintiff Gershman seeks to represent a class of all Minnesota residents who (a) rented a video from Google through Google Play wherein (b) Google retained for more than 65 days their personally identifiable information, including information that identifies the person as having requested or obtained specific video materials or services, and (c) without their consent."  *Id.* ¶ 49.

## II.  REMOVAL UNDER THE CLASS ACTION FAIRNESS ACT OF 2005

4.     Under Section 1441(a) of Title 28 of the United States Code, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending."

5.     Under the Class Action Fairness Act of 2005 ("CAFA"), United States district courts have original jurisdiction over purported class actions in which the number of members in the proposed class is at least 100; at least one plaintiff is diverse in citizenship from any defendant; and the aggregate amount in controversy exceeds $5,000,000.  *See* 28 U.S.C. § 1332(d).

6.     As set forth more fully below, Google may remove this case to this Court because (1) the putative classes includes at least 100 putative class members; (2) at least one member of the putative classes is a citizen of a State different from at least one defendant; and (3) the amount in controversy alleged exceeds $5,000,000.

### A.     The putative classes include at least 100 putative class members.

7.     A class action is removable under CAFA if the "number of members of all proposed plaintiff classes" is greater than or equal to 100.  29 U.S.C. § 1332(d)(5)(B).  Plaintiffs allege that "members of the Class number in the millions."  Compl. ¶ 50.  The putative classes therefore exceed 100 members.

### B.     There is minimal diversity.

8.     A class action is removable under CAFA if "any member of a class of plaintiffs is a citizen of a State different from any defendant."  28 U.S.C. § 1332(d)(2)(A).  The putative classes

consist of "New York residents" and "Minnesota residents."  Compl. ¶¶ 48, 49.  Google is a Delaware limited liability company and a subsidiary of XXVI Holdings Inc., which, in turn, is a subsidiary of Alphabet Inc., with its principal place of business in Mountain View, California. Thus, CAFA's minimum diversity requirement is satisfied because Defendant Google and the members of Plaintiffs' proposed classes are citizens of different states.

**C.    The amount in controversy exceeds $5,000,000.**

9.    A class action is removable under CAFA if the "matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs[.]"  28 U.S.C. § 1332(d)(2).  A notice of removal "need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold."  *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81 (2014); *see also Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015) (noting that "Congress intended CAFA to be interpreted expansively" and that a notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold and need not contain evidentiary submissions, even if a plaintiff affirmatively contends in the complaint that damages do not exceed $5,000,000).

10.    The amount in controversy under CAFA takes into account more than damages. Where the statutes at issue authorize them—as Plaintiffs allege the NYVCPA and the Minnesota Statute do here—attorneys' fees are also included in the amount in controversy for CAFA purposes.  *See Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998).

11.    Plaintiffs allege minimum statutory damages in the amount not less than of $500 per class member.  Compl. ¶¶ 66, 77.  Plaintiffs also allege that the members included within the classes "number in the millions."  *Id.* ¶ 50.  At $500 per class member, the alleged amount in controversy easily exceeds $5,000,000.  Moreover, Plaintiffs also seek attorneys' fees.  *Id.* ¶¶ 66, 77.

**III.   ALL PROCEDURAL REQUIREMENTS FOR REMOVAL HAVE BEEN SATISFIED**

12.    Pursuant to Section 1446 of Title 28 of the United States Code, copies of this Notice of Removal, along with a Notice to the Clerk of Santa Clara County Superior Court and Adverse Parties of Removal to Federal Court, are being served on Plaintiffs and Plaintiffs' counsel, and are

also being filed with the Clerk of Santa Clara County Superior Court.  A true and correct copy of the Complaint served on Google in the state-court action is attached hereto as **Exhibit A.**

13.     Section 1446(b) of Title 28 of the United States Code identifies two thirty-day periods for removing a case.  *See Kuxhausen v. BMW Fin. Servs. NA LLC*, 707 F.3d 1136, 1139 (9th Cir. 2013); *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 885 (9th Cir. 2010).  The first thirty-day removal period is triggered if the case stated by the initial pleading is removable on its face. *Kuxhausen*, 707 F.3d at 1139.  The second thirty-day removal period is triggered if the initial pleading does not indicate that the case is removable, and the defendant receives "a copy of an amended pleading, motion, order or other paper" from which removability may first be ascertained.  *Carvalho*, 629 F.3d at 885 (quoting Section 1446(b)).  Here, the Complaint is removable on its face, and Google has filed this Notice of Removal within thirty days of the date by which Google was served with the Complaint (October 24, 2022).  Removal is therefore timely in accordance with Section 1446(b).

14.     Venue is proper in this Court pursuant to Sections 1441(a) and 1446(a) of Title 28 of the United States Code because the United States District Court for the Northern District of California is the federal district embracing Santa Clara Superior Court, where the state court action was originally filed.

**IV.     CONCLUSION**

15.     By this Notice of Removal, Google does not waive any objections it may have as to service, jurisdiction or venue, or any defenses or objections it may have to this action.  Google intends no admission of fact, law, or liability by this Notice, and expressly reserves all defenses and motions.

Dated:  November 22, 2022                    WILLKIE FARR & GALLAGHER LLP

                                                          By:     */s/ Benedict Y. Hur*
                                                                       Benedict Y. Hur
                                                                       Simona Agnolucci
                                                                       Joshua Anderson
                                                                       Erica S. Miranda

                                                                       *Attorneys for Defendant Google LLC*

# EXHIBIT A

E-FILED
9/30/2022 4:56 PM
Clerk of Court
Superior Court of CA,
County of Santa Clara
22CV405052
Reviewed By: L. Wang

**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Joel D. Smith (State Bar No. 244902)
1990 North California Boulevard, Suite 940
Walnut Creek, CA  94596
Telephone: (925) 300-4455
E-Mail: ltfisher@bursor.com
          jsmith@bursor.com

**BURSOR & FISHER, P.A.**
Philip L. Fraietta (*Pro Hac Vice* Forthcoming)
888 Seventh Avenue
New York, NY 10019
Telephone: (646) 837-7150
E-Mail: pfraietta@bursor.com

*Attorneys for Plaintiffs*

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF SANTA CLARA

| | |
|---|---|
| DAVID LANDFAIR and SAMUEL M. GERSHMAN, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GOOGLE LLC,<br><br>Defendant. | Case No.   22CV405052<br><br><u>CLASS ACTION</u><br><br>**COMPLAINT** |

Plaintiffs David Landfair and Samuel M. Gershman ("Plaintiffs"), individually and on behalf of all others similarly situated, by and through their attorneys, make the following allegations pursuant to the investigation of their counsel and based upon information and belief, except as to allegations specifically pertaining to themselves, which are based on personal knowledge.

## NATURE OF THE ACTION

1.      This is a class action suit brought against Defendant Google LLC ("Google" or "Defendant") for its unlawful retention of Plaintiffs' and its other New York and Minnesota customers' personally identifiable information, including their names, addresses, credit card information, and video rental history in violation of the New York Video Consumer Privacy Act, N.Y. General Business Law ("GBL") §§ 670-675 ("NYVCPA") and Minnesota's M.S.A. § 325I.01-03 (the "Minnesota Statute").

2.      Google is a leading technology company that rents videos for streaming to consumers through its Google Play platform.

3.      Google maintains a digital record system that details the rental histories of every customer that rents a video from Google.  Google also maintains records containing its customers' billing addresses.

4.      As a result, Google maintains a digital dossier on millions of consumers throughout New York and Minnesota.  These records contain not only its customers' credit card numbers and billing/contact information, but also a detailed account of its customers' video rental histories.

5.      In recognition of the fact that companies who rent digital media – like Google – must collect certain confidential and sensitive consumer information with respect to personal viewing habits, New York and Minnesota law requires such companies to "destroy personally identifiable information as soon as practicable."  GBL § 673(5); M.S.A. § 325I.02(6).

6.      However, in direct contravention of the protections afforded to New York consumers under the NYVCPA, Google maintains and stores its customers' names, credit card numbers, billing and contact information, and most importantly, sensitive video rental histories for an indefinite period of time.

7.      Accordingly, Google has knowingly retained the "personally identifiable

information" and sensitive video rental histories of millions of New York and Minnesota consumers, in violation of New York and Minnesota law.

8.      Plaintiffs bring this action on behalf of themselves and two separate classes of all people in New York and Minnesota whose personally identifiable information and sensitive video rental histories were retained by Google.

### THE PARTIES

9.      Plaintiff David Landfair lives and is domiciled in Brooklyn, New York.

10.     In July 2016, Mr. Landfair rented movies from Google.

11.     In connection with that rental, Google collected Mr. Landfair's name, address, and credit card information.

12.     As of at least June 22, 2022, Mr. Landfair's account history still displayed the titles of the videos he rented, as well as the date he rented them and the price he paid for them.

13.     Plaintiff Samuel Gershman lives and is domiciled in Rochester, Minnesota.

14.     In November 2015, Plaintiff Gershman rented movies from Google.

15.     In connection with that rental, Google collected Mr. Gershman's name, address, and credit card information.

16.     As of at least June 21, 2022, Mr. Gershman's account history still displayed the titles of the videos he rented, as well as the date he rented them and the price he paid for them.

17.     Defendant Google LLC is a California corporation with its headquarters in Mountain View, California.   Google does business throughout California, New York, and Minnesota.

### JURISDICTION AND VENUE

18.     This Court has subject matter jurisdiction over this class action.  This Court has personal jurisdiction over the parties because Defendant, at all times relevant hereto, has systematically and continually conducted, and continues to conduct, business in this State.

19.     Venue is proper in this Court pursuant to Civil Code §§ 395 and 395.5.  Defendant conducts business in this County and throughout the State of California and its principal place of business is in this County.

**STATEMENT OF FACTS**

*The Federal Video Privacy Protection Act and Digital Dossiers*

20.     The desire to keep video rental history records private led Congress to enact the Video Privacy Protection Act of 1988, 18 U.S.C. § 2710 ("VPPA"). Inspired by the release of video rental records of Supreme Court Justice Nominee Robert H. Bork and his family, Congress promulgated the Act to explicitly preserve United States citizens' right to privacy in their video rental histories.

> When the VPPA was introduced, Senator Paul Simon noted that: There is no denying that the computer age has revolutionized our world. Over the past 20 years we have seen remarkable changes in the way each one of us goes about our lives. Our children learn through computers. We bank by machine. We watch movies in our living rooms. These technological innovations are exciting and as a nation we should be proud of the accomplishments we have made. Yet, as we continue to move ahead, we must protect time honored values that are so central to this society, particularly our right to privacy. The advent of the computer means not only that we can be more efficient than ever before, but that we have the ability to be more intrusive than ever before. *Every day Americans are forced to provide to businesses and others personal information without having any control over where that information goes. These records are a window into our loves, likes, and dislikes.*

S. Rep. No. 100-599 at 7-8 (1988) (emphasis added).

21.     One of the original drafters of the VPPA, Senator Patrick Leahy, remarked that "the trail of information generated by every transaction is now recorded and stored in sophisticated record-keeping systems is a new, more subtle and pervasive form of surveillance." S. Rep. No. 100-599 at 8 (1988).

22.     In recognition of the sensitivity of the video renting information, the VPPA requires video tape service providers, like Google, to destroy "personally identifiable information as soon as practicable, but no later than one year from the date the information is no longer necessary for the purpose for which it was collected … ." 18 U.S.C. § 2710(e).

23.     However, the VPPA differs from the NYVCPA and the Minnesota Statute in that it only provides a private right of action for the wrongful *disclosure* of personally identifiable

information, and not failure to destroy it.  *See* 18 U.S.C. § 2710(c) (providing private right of action for a "violation of this section" immediately after the disclosure prohibitions in section (b), but not listing the destruction requirements until section (e)).

### The New York Video Consumer Privacy Act and Minnesota Statute § 325I.02(6)

24.     On the heels of Congress having passed the VPPA, the New York Legislature passed the NYVCPA in 1993 "to protect the personal privacy of individuals and their families who rent video cassette tapes and movies and similar audio visual materials."  GBL § 671.

25.     In his sponsor memorandum, Assemblyman Anthony J. Genovesi noted:

> Video lists have enormous commercial utility, which adds to the likelihood that an individual's entertainment preferences will be disclosed.  Mailing lists are easily devised based on categorizing an individual's viewing habits as documented by video retail establishments' records.  For example, catalog companies and direct mail sales companies are naturally interested in obtaining lists of people who rent children's films, physical fitness films, adventure films, or adult films.

Exhibit A, Sponsor Memo at 3.

26.     In furtherance of those concerns, like the VPPA, the NYVCPA requires that video tape service provides, like Google, "destroy personally identifiable information as soon as practicable, but no later than one year from the date the information is no longer necessary for the purpose for which it was collected … ."  GBL § 673(5).

27.     However, unlike the VPPA, the NYVCPA explicitly provides a private right of action to enforce that statutory requirement.  *See* GBL § 675(1).

28.     Specifically, under the NYVCPA, the private right of action is located at the end of the Act and extends to all "violation[s] of this *article*," which refers to Article 32 of the General Business Law, *i.e.*, the NYVCPA.

29.     This deviation from the VPPA is not an accident.  Indeed, Assemblyman Genovesi specifically noted in his sponsor memorandum that due to the shortcomings of the VPPA, "a separate state law is needed in New York to give her citizens meaningful protection from unwanted intrusions."  Ex. A, Sponsor Memo at 3.

30.     Minnesota's law governing video rental records are similar to the NYVCPA.

31.     Minnesota law has the same language found in the NYVCPA, requiring video tape service provides, like Defendant, to "destroy personally identifiable information as soon as practicable, but no later than one year from the date the information is no longer necessary for the purpose for which it was collected … ."  M.S.A. § 325I.02(6).

32.     And, like NYVCPA, the Minnesota Statute explicitly provides a private right of action to enforce that statutory requirement.  *See id.* at § 325I.03.

33.     Specifically, under the Minnesota Statute, "a consumer who prevails or substantially prevails in an action brought under this section is entitled to a minimum of $500 in damages, *regardless of the amount of actual damage proved*, plus costs, disbursements, and reasonable attorney fees."  *Id.* (emphasis added).

34.     As a result, by its plain terms, Minnesota Statute § 325I.03 affords greater protections than does VPPA.

### A Brief Overview of Renting Videos Through Google Play

35.     Google allows consumers to rent videos to instantly stream on their devices.

36.     Consumers must first create an account with Google which requires them to input their name and date of birth.

37.     After creating a Google account, renting a video through Google Play is a four-step process.  First, the customer searches Google Play's selections by using its interface.  Second, after the customer has identified a video that she wishes to rent, the customer clicks that video and then clicks the "rent" button, which prompts him to enter his Google account username and password.  Third, the customer enters his Google account username and password and clicks "rent," which then prompts users to enter their credit card information, including their billing address.  Fourth, once this information is entered, Google charges the credit card on file and the user then begins renting the video.

38.     Once the video is rented it is accessible to the customer in the "rented" section of the Google Play interface.

39.     The customer must watch the video within 30 days of the rental and has 48 hours

1  from first viewing the video to complete it.

2        40.     After 30 days of the rental, or after 48 hours from first viewing the video, whichever

3  comes earlier, the video is no longer accessible to the customer.

4        41.     At no time does Google obtain the consent of its customers to retain their personally

5  identifiable information.

6        42.     Google requires customers to use only credit or debit cards to rent videos from

7  Google.

8        43.     Google Play's terms and conditions provide that all transactions are final.

9        44.     Google offers a refund only within 7 days of the rental, or, if technical problems

10  prevent or unreasonably delay the video's delivery, 65 days of the rental.

11        ***Google Systematically Violates the NYVCPA and Minnesota Statute § 325I.02(6)***

12        45.     With every rental transaction, Google collects, stores and maintains its customers'

13  name, credit and debit card information, billing address, and video rental history for an indefinite

14  period of time.

15        46.     The video rental histories that Google stores include every video that the customer

16  has ever rented through Google Play, as well as information which identifies the customer as having

17  requested or obtained specific video materials or services.

18        47.     In light of the fact that its customers' rental transactions are necessarily completed

19  within 30 days from the date of rental, and given Google's policy not to provide refunds for charges

20  that are over 65 days old, Google systematically violates the NYVCPA and the Minnesota Statute

21  by storing and maintaining its customers' "personally identifiable information," as that term is

22  defined by the statutes, for longer than 65 days.

23                                **CLASS ACTION ALLEGATIONS**

24        48.     Plaintiff Landfair seeks to represent a class of all New York residents who (a) rented

25  a video from Google through Google Play wherein (b) Google retained for more than 65 days their

26  personally identifiable information, including information that identifies the person as having

27  requested or obtained specific video materials or services, and (c) without their consent (the "New

28  York Class").

49.     Plaintiff Gershman seeks to represent a class of all Minnesota residents who (a) rented a video from Google through Google Play wherein (b) Google retained for more than 65 days their personally identifiable information, including information that identifies the person as having requested or obtained specific video materials or services, and (c) without their consent (the "Minnesota Class").

50.     Members of the Classes are so numerous that their individual joinder herein is impracticable.  On information and belief, members of the Class number in the millions.  The precise number of Class members and their identities are unknown to Plaintiffs at this time but may be determined through discovery.  Class members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant.

51.     Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members.  Common legal and factual questions include, but are not limited to, whether Defendant has violated the NYVCPA and the Minnesota Statute by storing and maintaining personally identifiable information, including video rental histories for longer than 65 days; and whether Class members are entitled to statutory damages for the aforementioned violations.

52.     The claims of the named Plaintiffs are typical of the claims of the Classes because the named Plaintiffs, like all other Class members, rented videos from Google through Google Play and had their personally identifiable information, including video rental histories stored and maintained by Google for longer than 65 days.

53.     Plaintiffs are an adequate representative of the Classes because their interests do not conflict with the interests of the Class members they seek to represent, they have retained competent counsel experienced in prosecuting class actions, and they intend to prosecute this action vigorously.  The interests of Class members will be fairly and adequately protected by Plaintiffs and their counsel.

54.     The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Class members.  Each individual Class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation

necessary to establish Defendant's liability.  Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case.  Individualized litigation also presents a potential for inconsistent or contradictory judgments.  In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability.  Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

55.     Plaintiffs bring their claims in this action individually and on behalf of members of the Classes against Defendant.

**COUNT I**
**Violation of the New York Video Consumer Privacy Act,**
**N.Y. GBL §§ 670-675**

56.     Plaintiff Landfair repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

57.     Plaintiff Landfair brings this claim individually and on behalf of the members of the proposed New York Class against Defendant.

58.     Google is a "video tape service provider" as defined by the NYVCPA, because it "[e]nage[s] in the business of rental of prerecorded video cassette tapes or similar audio visual materials."  GBL § 672(4).

59.     Plaintiff Landfair is a "consumer" as defined by the NYVCPA, because he is a "renter … of goods or services from a video tape service provider."  GBL § 672(1).

60.     The NYVCPA requires video tape service providers "destroy personally identifiable information as soon as practicable, but no later than one year from the date the information is no longer necessary for the purpose for which it was collected … ."  GBL § 673(5).

61.     The NYVCPA defines "personally identifiable information" as "any information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider."  GBL § 672(1).

62.     As Google's customer video rental transactions are completed within 30 days of the rental (as the video is no longer accessible to the customer after that time), and Google does not provide refunds for charges that are more than 65 days old, it is not necessary for Google to store and maintain Plaintiff's and the New York Class's personally identifiable information and personal video rental histories for longer than 65 days.

63.     Accordingly, and in violation of GBL § 673(5), Google has failed to destroy its customers' personally identifiable information as soon as practicable after it was no longer necessary for the purpose for which it was collected.

64.     Nonetheless, Google has stored and maintained Plaintiff Landfair's personally identifiable information, as that term is defined by the NYVCPA, for well over 65 days since he rented a video from Google, through Google Play, in July 2016.

65.     Further, Google does not have a policy in place to timely destroy "personally identifiable information," as required by the NYVCPA.

66.     Pursuant to GBL § 675, Plaintiff Landfair and the New York Class have been injured by the violations of GBL § 673(5), and seek damages of not less than $500 each, regardless of the amount of actual damage proved, plus costs, disbursements, and reasonable attorneys' fees.

### COUNT II
### Violation of the Minnesota Statute M.S.A. § 325I.01-03

67.     Plaintiff Gershman repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

68.     Plaintiff Gershman brings this claim individually and on behalf of the members of the proposed Minnesota Class against Defendant.

69.     Defendant is a "videotape service provider" as defined by M.S.A. § 325I01(5), because it "[e]nage[s] in the business of rental of prerecorded videocassette tapes or similar audiovisual materials."

70.     Plaintiff Gershman is a "consumer" within the meaning of the statute because he is a "renter … of goods or services from a videotape service provider." *Id.* at § 325I01(2).

71.     The Minnesota Statute requires video tape service providers "destroy personally identifiable information as soon as practicable, but no later than one year from the date the information is no longer necessary for the purpose for which it was collected … ."   M.S.A. § 325I02(6).

72.     The Minnesota Statute defines "personally identifiable information" as "information that identifies a person as having requested or obtained specific video materials or services from a videotape service provider." M.S.A. § 325I01(3).

73.     As Google's customer video rental transactions are completed within 30 days of the rental (as the video is no longer accessible to the customer after that time), and Google does not provide refunds for charges that are more than 65 days old, it is not necessary for Google to store and maintain Plaintiff's and the Class's personally identifiable information and personal video rental histories for longer than 65 days.

74.     Accordingly, and in violation of Minnesota law, Defendant has failed to destroy its customers' personally identifiable information as soon as practicable after it was no longer necessary for the purpose for which it was collected.

75.     Nonetheless, Defendant has stored and maintained Plaintiff Gershman's personally identifiable information for well over 65 days since he rented a video from Defendant.

76.     Further, Defendant does not have a policy in place to timely destroy "personally identifiable information," as required by Minnesota law.

77.     Plaintiff Gershman and the Minnesota Class have been injured by the violations of M.S.A. § 325I01, and seek damages of not less than $500 each, regardless of the amount of actual damage proved, plus costs, disbursements, and reasonable attorneys' fees.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, seek judgment against Defendant, as follows:

a.      Determining that this action is a proper class action;

b.      For an order certifying the Classes, naming Plaintiffs as the representative of the

1          Classes, and naming Plaintiffs' attorneys as Class Counsel to represent the Classes;

2       c.     For an order declaring that the Defendant's conduct violates the statutes referenced

3          herein;

4       d.     For an order finding in favor of Plaintiffs and the Classes on all counts asserted

5          herein;

6       e.     For statutory damages in amounts to be determined by the Court and/or jury;

7       f.     For prejudgment interest on all amounts awarded;

8       g.     For an order awarding Plaintiffs and the Classes their reasonable attorneys' fees and

9          disbursements, expenses, and costs of suit.

10                   **DEMAND FOR TRIAL BY JURY**

11     Plaintiffs hereby demand a trial by jury of all issues so triable.

12

13  Dated: September 30, 2022          Respectfully submitted,

14                    **BURSOR & FISHER, P.A.**

15

16                    By:_____

17                        Joel D. Smith

18                    L. Timothy Fisher (State Bar No. 191626)

19                    Joel D. Smith (State Bar No. 244902)
                        1990 North California Blvd., Suite 940

20                    Walnut Creek, CA 94596
                        Telephone: (925) 300-4455

21                    Facsimile: (925) 407-2700
                        Email: ltfisher@bursor.com

22                            jsmith@bursor.com

23                    **BURSOR & FISHER, P.A.**
                    Philip L. Fraietta (*Pro Hac Vice* Forthcoming)

24                    888 Seventh Avenue
                      New York, NY 10019

25                    Telephone: (646) 837-7150
                      E-Mail: pfraietta@bursor.com

26

27                    *Attorneys for Plaintiffs*

28

**EXHIBIT A**

5904-A                      ①              A 5904-A

Assemblyman Anthony J. Genovesi
New York State Assembly
**MEMORANDUM IN SUPPORT OF LEGISLATION**
submitted in accordance with Assembly Rule III, Section 1 (e)

Bill Number: Assembly 5904    Senate ____    ____ Memo on original draft

____ Memo on amended bill

Sponsors: Assemblymembers    Anthony J. Genovesi

Senators _____

TITLE:

An act to amend the general business law, in relation to protecting the
privacy of consumers renting or purchasing video cassette tapes or similar
audio visual materials.

PURPOSE OR GENERAL IDEA OF BILL:

The purpose of this bill is to protect the personal privacy of consumers
who purchase or rent prerecorded video cassette tapes or similar
audiovisual materials by prohibiting public disclosure of information that
could reveal the identity of such individuals except with the consumer's
consent or pursuant to certain exceptions, such as a court order.
Exceptions to the prohibition are designed to avoid unreasonably
restricting the ability of video retail establishments to retain such
information as is needed to carry on their businesses.

SUMMARY OF SPECIFIC PROVISIONS:

This bill would add a new Article 31 to the General Business Law, entitled
the Video Consumer Privacy Act. The bill would prohibit video tape service
providers from disclosing to any person personally identifiable information
concerning the consumer, including information which identifies a person as
having rented or obtained specific video materials or services from a video
tape service provider.

Exceptions to the general disclosure prohibition would be made where the
disclosure is: to the consumer or is made with the informed, written
consent of the consumer given at the time the disclosure is sought; to any
person if the disclosure is incident to the ordinary course of business of
the video tape service provider as defined in the bill; to a grand jury
pursuant to a grand jury subpoena; pursuant to a court order in a civil
case upon a showing of compelling need or in a criminal case upon a showing
of legitimate need and upon motion and an opportunity to appear to the
consumer; to a law enforcement agency pursuant to a lawfully obtained
warrant; or to a court pursuant to a civil action for conversion commenced
by the video tape service provider or to enforce collection of fines for
overdue or unreturned video tapes, and then only to the extent necessary to
establish the fact of the rental.

*A 5904-A*

②

Old video consumer records must be destroyed within one year of the
information no longer being necessary or requested.

Violators of the bill's provisions would be liable to the consumer for
damages and could also be subject to an action brought by the Attorney
General for injunctive relief and a fine of up to $1,000.

EFFECTS OF PRESENT LAW WHICH THIS BILL WOULD ALTER:

Adds a new Article 31 to the General Business Law.

JUSTIFICATION:

Retail establishments that devote all or part of their business to the sale
or rental of pre-recorded video tapes and movies have become big business.
Almost half of all U.S. households are equipped with a video cassette
recorder. Americans spend hundreds of millions of dollars on renting and
buying movies for home viewing. Thousands of retail outlets rent and sell
video cassettes both to people who enroll as "club members" and to members
of the public generally. Such establishments commonly keep detailed
computerized records of the names and addresses of individual customers
along with the titles of the movies they have rented or purchased. Thus, an
individual's entire history of rentals or purchases of video tapes or
movies for personal entertainment can be obtained at the press of a button.

The unauthorized release of such information raises serious privacy and
First Amendment considerations. The problem was graphically illustrated
during the course of two recent highly-publicized public proceedings: When
Lieutenant Oliver North took the witness stand in the Iran-Contra hearings,
a list of movies rented by him and his family was obtained and made public.
Similarly, when Judge Robert Bork was the subject of a controversial
hearing for a Supreme Court judgeship, his tastes in movies were disclosed
and published by a Washington weekly newspaper, which printed a list of 146
titles of videos rented over the prior year and a half by himself or family
members.

Historically, during the McCarthy era, investigators obtained lists of
books checked out of public libraries and used them against a number of
people. Today in New York State, persons borrowing books from libraries are
protected from such conduct by CPLR 4509, which prohibits the dissemination
of personally identifying details contained in library circulation records
except under specific circumstances. Similarly, personally identifiable
information concerning subscribers of cable television channels is
protected from dissemination under federal law by the Cable Privacy
Protection Act, 47 USC 551 et seq.

Video retail establishment records containing personally identifying
information certainly present the same potential for abuse as library and
cable television records. The Federal government recognized the privacy
problems presented by the video age by enacting the Video Privacy
Protection Act of 1988, P.L. 100-618. Unfortunately, that law is flawed in
that it allows disclosure of personally identifiable information to any

CL0015

A5904-A

③

person if the disclosure is only of the name and address of the consumer and the video consumer has been given the opportunity to prohibit such disclosure. An even more serious flaw is the new law's exception for commercial mailing lists and similar purposes: "the subject matter of such materials may be disclosed if the disclosure is for the exclusive use of marketing goods and services directly to the consumer." (18 U.S.C. 2710(b) (2) (D) (ii), P.L. 100 - 618 [1988]).

Video lists have enormous commercial utility, which adds to the likelihood that an individual's entertainment preferences will be disclosed. Mailing lists are easily devised based on categorizing an individual's viewing habits as documented by video retail establishments' records. For example, catalog companies and direct mail sales companies are naturally interested in obtaining lists of people who rent children's films, physical fitness films, adventure films, or adult films.

The Department of Law has received dozens of complaints from consumers who have received unsolicited direct mail advertisements for pornographic home video movies, containing explicit descriptions of the movies' contents and suggestive pictures. Some of the solicitations were addressed to the children of the household. It is suspected that a source of these direct mail companies' access to individuals' name and addresses has been video clubs, who disclose lists of customers. The Federal law does nothing to prohibit such use of video establishments' records, since it has a broad mailing list exception. Thus, a separate state law is needed in New York to give her citizens meaningful protection from unwanted intrusions and to cover those video tape service providers which are not engaged in or are affecting interstate commerce.

This bill would prevent the unauthorized sale or other disclosure of personally identifiable information concerning a consumer's movie purchases or rentals. An aggrieved individual could bring a lawsuit under this bill and obtain a minimum of $500 in damages if successful, along with costs and attorney's fees. Violation of the act would also subject the violator to an action for injunctive relief brought by the Attorney General, and to a fine of up to $1,000 per violation. The bill would ensure that video tape service providers will be able to pursue normal business operations by using computerized information as needed for inventory or other legitimate purposes in-house, or to disclose personally identifiable information with the express written consent of the consumer.

Consumers should be entitled to view movies and tapes of their own choosing within their own homes without their personal choices becoming public or finding their way to a pornographer's mailing list. They should not be put in the position of self-censorship out of concern over public disclosure of their choices of video movies. Enactment of this bill would mean that video consumers could rent or purchase video tapes and movies without fear that information connecting them or members of their families to any particular titles could become public or appear on an unwanted mailing list.